IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

    Plaintiff,

  v.

JOHN BROSNAN,

    Defendant.
                                /

No. CR 10-00068 WHA

**ORDER DENYING
MOTION FOR NEW TRIAL**

**INTRODUCTION**

After being convicted for perjury, obstruction of justice, wire fraud, and aggravated identity theft in connection with submitting a false document to the Court, defendant moves for a new trial pursuant to Rule 33. Defendant has submitted six other motions in conjunction with this motion for a new trial. This order will consider all seven motions. For the reasons stated below, defendant's motions are **DENIED**.

**STATEMENT**

This criminal action arose after a protracted series of civil lawsuits between defendant John Brosnan and another individual, Jon Oberle. Brosnan joined a lawsuit to file an involuntary Chapter 7 bankruptcy petition against Oberle. That action was dismissed. Oberle countersued for damages and fees. Judgment for reduced fees was granted for Oberle, and Brosnan appealed to this Court. The undersigned judge affirmed the judgment of the bankruptcy court.

Brosnan then brought a civil action, *Brosnan v. Oberle, et al.*, No. 07-04337 WHA (N.D. Cal. 2007), suing for damages and fees related to the recently-affirmed bankruptcy action.

Therein, Brosnan named as defendants Oberle and Attorneys Joshua Brysk and James Schwartz, who represented Oberle in the earlier action. Finding that this action was duplicative of the previous appeal from the bankruptcy court, the undersigned judge eventually dismissed the action (Dkt. No. 28).

It was in this last action, *Brosnan v. Oberle*, wherein the events applicable to the instant criminal matter arose. On May 1, 2008, a routine case management conference was scheduled. Neither party appeared. An order subsequently dismissed the case (Dkt. No. 16). Then, Brosnan sent a letter to the Court, stating that he had not appeared because he had received a letter from Oberle's attorney, Brysk, informing him that the case management conference had been continued and that he need not appear (Dkt. No. 19). Upon inquiry from the Court, Attorney Brysk denied writing the letter (Brysk Decl. ¶ 6). A hearing was held to get to the bottom of the issue. Oberle there insisted this letter was a forgery created by Brosnan (Tr. at 27). Brosnan insisted it was a forgery created by Oberle (Dkt. No. 19). After conducting an evidentiary hearing in which both Brosnan and Oberle testified under oath, the undersigned judge referred both sides' contentions to the U.S. Attorney's Office for investigation (Dkt. No. 28).

After an investigation by the FBI, the government charged Brosnan with wire fraud, obstruction of justice, perjury, and aggravated identification theft in connection with the submission of the fabricated Brysk letter. Following a jury trial, Brosnan was convicted in December 2010.

In March 2011, Brosnan's counsel filed a motion for a new trial based on newly discovered evidence (*United States v. Brosnan*, No. 10-00068 WHA, Dkt. No. 143). Shortly thereafter, counsel filed a notice of potential conflict of interest (Dkt. No. 146). The undersigned judge then appointed new counsel, Attorney Frank Bell. Attorney Bell investigated the claim and withdrew the motion, acknowledging that the evidence Brosnan sought was, "at best, neutral" (Dkt. No. 158 at 1). Defendant then appealed his conviction to our court of appeals, which affirmed (Dkt. No. 220). The Supreme Court denied his writ of certiorari (Dkt. No. 223). Next, Brosnan filed a motion for the appointment of counsel for

post-conviction appeal (Dkt. No. 228). This motion was denied, as the discretionary appointment of counsel was not warranted based on the record (Dkt. No. 230).

On his own, Brosnan has now submitted seven pro se motions — one motion for a new trial pursuant to Rule 33, and six related motions (Dkt. Nos. 232, 235–36, 245–48). Brosnan's first motion appears to be an omnibus motion, including a smattering of allegations, some of which are further discussed in the later-filed motions. Most motions allege Brady violations by the prosecution. One motion appears to argue that there is newly discovered evidence. For the reasons stated below, the motions are **DENIED.**

## ANALYSIS

Under Rule 33, "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." The rule specifically contemplates newly discovered evidence as possible grounds for a new trial. Under Rule 33(b)(1), "[a] motion for a new trial grounded on newly discovered evidence must be filed within 3 years after the verdict or finding of guilty."

### 1. BRADY VIOLATIONS.

Normally, to prevail on a Rule 33 motion, the movant must satisfy the following five requirements: (1) the evidence must be newly discovered; (2) the failure to discover the evidence sooner must not be the result of a lack of diligence on the defendant's part; (3) the evidence must be material to the issues at trial; (4) the evidence must be neither cumulative nor merely impeaching; and (5) the evidence must indicate that a new trial will probably result in acquittal. *United States v. Kulczyk*, 931 F.2d 542, 548 (9th Cir. 1991).

When motions for a new trial include newly discovered evidence along with alleged Brady violations, these violations have been decided according to their own respective standard rather than the more stringent five-part *Kulczyk* test. In *United States v. Jernigan*, 492 F.3d 1050, 1051 (9th Cir. 2007) (en banc), defendant alleged Brady violations along with a Rule 33 motion for a new trial based on newly discovered evidence. Our court of appeals reviewed the applicable violations, filed nearly three years after conviction, under the Brady standard.

This order will apply the Brady standard to assess defendant's applicable claims. To prove such a violation has occurred, a defendant must meet three prongs: (1) the evidence at issue must be favorable to the accused; (2) the evidence must have been suppressed by the state, either willfully or inadvertently; and (3) prejudice must result from failure to disclose the evidence. *Benn v. Lambert*, 283 F.3d 1040, 1052 (9th Cir. 2002). Evidence is prejudicial if, in the context of the entire record, it "undermines confidence in the outcome of the trial," resulting in a "reasonable probability . . . the result of the proceeding would have been different." *Karis v. Calderon*, 283 F.3d 1117, 1128 (9th Cir. 2002).

The following claims of Brady violations are discernable from Brosnan's numerous motions: (1) the prosecution did not turn over evidence related to Attorney Brysk's credibility as a witness (*United States v. Brosnan*, No. 10-00068 WHA, Dkt. No. 232); (2) the prosecution failed to disclose the existence of additional unspecified computers in Oberle's possession on which he could have created the Brysk letter (Dkt. No. 246); (3) the prosecution withheld evidence of an Apple computer under Oberle's control (Dkt. No. 245); (4) the prosecution did not reveal an immunity agreement entered into with Oberle (Dkt. No. 236); and (5) the prosecution did not disclose information about the illegal activities of Oberle's credit businesses, Credit Line Financial (CLF) and Credit Line IQ (CLIQ) (Dkt. No. 235). This order will address the allegations in turn.

*First*, Brosnan claims that CLF, Oberle's credit business, was illegal. He claims that the final judgment in another lawsuit, *People v. DOSO, Inc., et al.*, No. MSC06-00155 (Cal. Sup. Ct. 2008), is evidence of this illegality. In *DOSO*, a judgment was entered against Oberle in June 2008 enjoining anyone from working on behalf of Oberle for the express or implied purpose of improving a consumer's credit or providing assistance regarding credit.

According to Brosnan, Attorney Brysk knew about the *DOSO* judgment and that CLF was an illegal enterprise. Nevertheless, he claims that Attorney Brysk continued to help Oberle operate this business in violation of the Racketeer Influenced and Corrupt Organizations Act. Further, the lost profits for which Oberle and Attorney Brysk sued Brosnan in response to the Chapter 7 petition were completely illegitimate, since they were gained from an illegal

4

enterprise. This means that, in filing the countersuit against Brosnan, Attorney Brysk "fil[ed] false documents, commit[ed] wire fraud, and elicit[ed] perjury from Oberle" (Dkt. No. 232 at 12). Since Attorney Brysk was a key witness in Brosnan's trial, Brosnan alleges that withholding this evidence would have been prejudicial (*id.* at 9).

If a petitioner "has enough information to be able to ascertain the supposed Brady material on his own, there is no suppression." *United States v. Bond*, 552 F.3d 1092, 1095–96 (9th Cir. 2009) (citations and internal quotation marks omitted). In *Bond*, both sides "had access to . . . public testimony," and our court of appeals therefore determined that the evidence could not have been "withheld" under the meaning of Brady. *Id.* at 1097, n.3.

So too here. In addition to the lack of factual basis for the allegations of criminal conduct, defendant's contention is based on information that was available in the public record to defendant at the time of trial. Brosnan's belief that CLF is an illegal business appears to derive solely from the judgment in *DOSO*. That judgment was issued in June 2008. Brosnan's trial took place in December 2010. The action was known to defense counsel — she mentioned it in closing argument (Trial Tr. at 1371). It is implausible on its face to consider this "new evidence" or to consider it "withheld" by the prosecution.

*Second*, Brosnan seeks access to what he terms the "Oberle Mystery Computer." This is the computer which Oberle allegedly hid from the government and on which he created the Brysk letter. Brosnan "was not allowed to examine the Oberle Mystery Computer" because "Oberle had lied to the FBI regarding its existence" (Dkt. No. 246 at 3).

In *United States v. Lopez-Alvarez*, 970 F.2d 583, 598 (9th Cir. 1992), our court of appeals held that a Brady violation had not occurred where the evidence that the defendant asserted the government had withheld was "purely speculative." In that case, there was no indication that the information which the defendant requested from the government even existed. *Ibid.* Likewise, Brosnan has put forth no evidence that the FBI had computers in its possession that it did not reveal to the defense. Instead, Brosnan simultaneously claims that Oberle hid this computer from the government, but also that the government did not disclose its existence. The existence of this computer, and any evidence that may be on it, is purely speculative.

5

*Third*, Brosnan claims more specifically that the prosecution withheld evidence found on the Oberle computer the FBI did search of a "folder called Apple Computer . . . which contained information evidencing that Oberle was backing up information from an Apple computer." He alleges that the government did not reveal the existence of the folder to the defense (Dkt. No. 245). Brosnan submits no evidence to back up this assertion that the prosecution knew of an Apple computer during its investigation. Further, Brosnan points to no specific evidence that could be found on this computer other than suggesting that there might be evidence that Brosnan created the Brysk letter, which, again, is highly speculative. As our court of appeals affirmed in *Downs v. Hoyt*, 232 F.3d 1031, 1037 (9th Cir. 2000), "speculation that the withheld material *might* have led to some admissible evidence which *might* have been sufficiently favorable" is not sufficient to establish a Brady violation.

Additionally, this evidence is not material in light of the existing evidence under which Brosnan was convicted. The existence of an Apple backup folder would only serve to demonstrate the possibility that Oberle owned an additional computer that was not searched by the FBI. Defense counsel argued at trial that there had been unsearched computers. Nevertheless, the jury decided beyond a reasonable doubt that the forensic evidence and evidence of Brosnan's past conduct was sufficient to convict. This order will add that the evidence of guilt was overwhelming.

*Fourth*, Brosnan requests that the government turn over an immunity agreement that he claims the government entered into with Oberle. Brosnan has deduced the "obvious" existence of this alleged agreement from the fact that Oberle has not been charged with illegally operating a second credit business, Credit Line IQ, after CLF was shut down (Dkt. No. 236 at 7). This allegation is a bald assertion unsupported by facts. Brosnan puts forth no details of when or why this agreement was made or how it could have impacted him at trial, *particularly given that Oberle did not testify*.

*Fifth*, Brosnan wants the government to reveal the results of its investigation into Oberle's illegal operation of Credit Line Financial (CLF) and Credit Line IQ (CLIQ) (Dkt. No. 235 at 1). Brosnan argues that Agent Songsanand must have known CLF was illegally

operated. He therefore would have known that CLIQ, a credit repair business in which Oberle's office was located, was also illegally operated. The FBI allegedly did not turn this information about the illegality of CLIQ over to the defense because it would have damaged Attorney Brysk's credibility.

Once again, CLF's status, and the judgment entered against CLF and Oberle in *DOSO*, was public information available at the time of trial. Any assumptions of illegality regarding Oberle's businesses that derive from the judgment can therefore not properly be considered "withheld" by the prosecution.

Defendant's motions based on the above alleged Brady violations are therefore **DENIED**.

### 2. NEWLY DISCOVERED EVIDENCE.

At trial, Attorney Brysk testified that he was not served with and had no knowledge of Brosnan's lawsuit against himself, Oberle, and Schwartz at the time of the case management conference on May 1. Brosnan submits that there is newly discovered evidence that proves Attorney Brysk knew of Brosnan's lawsuit prior to this date.

Brosnan argued that Attorney Brysk must have known of the lawsuit for two reasons. *First*, Oberle, a co-defendant, knew about the lawsuit in March and informed an attorney at the Law Offices of James Schwartz, where Attorney Brysk was employed. The new evidence Brosnan submits is a letter that Oberle filed with the Court in March 2008. In this letter, Oberle, confused about the status of the lawsuit, wrote that he "had an attorney look it up for me today online" (*Brosnan v. Oberle, et al.*, No. 07-04337 WHA; Dkt. No. 11). As an attachment to his letter, Oberle submitted a copy of the docket history, which had been downloaded from PACER. Brosnan claims that the login name used to download the document from PACER was the login of one of the attorneys at the Law Offices of James Schwartz. Brosnan claims that this attorney must have informed Attorney Brysk that he was named as a defendant. Attorney Brysk then would have known about the lawsuit in March, so goes the reasoning.

*Second*, Brosnan submitted a declaration from Robert Jacobson. There is no identifying information about Mr. Jacobson other than his name and a P.O. Box address. Jacobson declares that he mailed the lawsuit documents in the *Brosnan v. Oberle* case to Attorney Brysk. He says

7

that he later spoke to Attorney Brysk, who verified that he received the documents (Dkt. No. 131).

Neither of these documents meet the *Kulczyk* five-part test. As stated above, the failure to discover the evidence sooner must not be the result of a lack of diligence on the defendant's part. *Kulczyk*, 931 F.2d at 548. The letter submitted to the Court by Oberle was publicly filed in March 2008. It was readily available to the defense during trial, and cannot be properly considered "new." On the same note, although Jacobson's role is left undetailed, it appears that Brosnan solicited him to mail the documents. Brosnan could have, at any time prior to trial, informed his attorney about this individual's existence and retrieved this evidence. Due to Brosnan's lack of due diligence in failing to bring this witness in a timely manner, Brosnan has made it impossible to develop a factual record that could confirm the veracity of these assertions.

Defendant's motion based on newly discovered evidence is therefore **DENIED**.

## CONCLUSION

For the above-stated reasons, defendant's motions for a new trial are **DENIED.**

**IT IS SO ORDERED.**

Dated: August 15, 2013.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE